# Moosic Mountain & Carbondale Railroad Company, Appt., *v.* Delaware, Lackawanna, & Western Railroad Company

A preliminary injunction, restraining one railroad company from obstructing another in locating and operating a grade crossing over the former's track, reinstated and continued in force until final hearing.

(Argued February 20, 1888. Decided April 30, 1888.)

NOTE.—For the regulation of grade crossings under the act of 1871, see note to Wheeling, P. & B. R. Co. v. Chartiers Connecting R. Co. 1 Sad. Rep. 213.

January Term, 1888, No. 326, E. D., before Gordon, Ch. J., Paxson, Sterrett, and Green, JJ. Appeal by plaintiff from a decree of the Common Pleas of Lackawanna County dissolving a preliminary injunction, November Term, 1887, No. 4. Reversed.

On November 21, 1887, the Moosic Mountain & Carbondale Railroad Company filed a bill against the Delaware, Lackawanna, & Western Railroad Company, which in substance was as follows:

1. That plaintiff is a corporation chartered under the laws of Pennsylvania;

2. That by its charter, granted February 15, 1887, plaintiff was authorized to locate, construct, and operate a railroad from a point at or near the city of Carbondale, in the county of Lackawanna, at a connection with the Jefferson branch of the New York, Lake Erie, & Western railroad to a junction with the Erie & Wyoming Valley railroad; that plaintiff's capital is $150,000;

3. That plaintiff has located a single track road 4 2-100 miles long from a point on the Delaware & Hudson Canal Company's railroad near Winton station, to "Marshwood" colliery; that a large part of the road has been graded and partially prepared for use, at an outlay of $100,000; that it will require $50,000 more to complete it; that the junction with the Delaware & Hudson road has been made and rails laid for a considerable distance;

4. That the sole purpose for which the road is designed is to furnish an outlet for the coal to be mined by the Moosic Mountain Coal Company;

5. That the Moosic Mountain Coal Company was chartered October 20, 1885; that it has purchased the coal under 1,700 acres of coal land in Lackawanna county, upon which a slope has been sunk, a breaker built and other improvements made, at a cost of $125,000, and that it is ready to mine and ship coal as soon as transportation can be secured;

6. That, except by the railroad located by plaintiff, there is no available means of getting coal to market from this mine;

7. That the total gradient of plaintiff's road is 600 feet, or 160 feet per mile;

8. That plaintiff's engineers ran six trial lines for the loca-

tion of the road, and fixed upon the adopted line as the cheapest and most practicable; that to so locate the road as to avoid crossing defendant's road would cost $50,000 to $75,000 more than the cost of the located route;

9. That defendant owns and operates the Winton branch railroad, which leaves its main line at a point near Greenville station and runs northeast to a point near the village of Archibald;

10. That the Winton branch is a single-track road used only for the transportation of coal from six or seven mines and a small amount of freight; that no passenger trains are ever run upon it and not more than an average of four to six trains a day of any kind;

11. That the line of plaintiff's road as located and partially constructed crosses the said "Winton branch" at a point near the village of Jessup; that it is necessary that this crossing should be at grade, and is practically impossible to so construct it that the crossing shall be either above or below grade;

12. That plaintiff endeavored to agree with defendant upon terms of crossing, offering to bear all expense of constructing and maintaining the crossing and to keep all necessary watchmen and signals, but that defendant has refused to consent to and threatened to resist the crossing;

13. That plaintiff has already put in place at its own expense all necessary rails and frogs to complete the crossing, but the defendant threatens to prevent the use of the same and to tear out the crossing;

14. That the crossing as constructed does not in any way interfere with the safe and economical operation of the Winton branch railroad;

15. That the crossing is so located as to be plainly visible for a long distance in both directions on the Winton branch and in one direction on plaintiff's road; that in the other direction on plaintiff's road an ordinary ball signal can be plainly seen for half a mile; that plaintiff is willing to erect all signals and take all the precautions necessary to secure the perfect safety of the crossing; and

16. That if defendant should succeed in preventing plaintiff from making and operating the grade crossing it would necessitate the abandonment of all improvements made and would involve such loss and expense as would imperil or render absolute-

ly worthless all capital invested in plaintiff company and in the Moosic Mountain Coal Company, and thereby occasion irreparable injury to plaintiff.

The prayers of the bill were: (1) For a preliminary injunction restraining defendant, its agents or employees, from obstructing or interfering with the location or operation of plaintiff's road upon and over the Winton branch by a crossing at grade at a point near the village of Jessup as located and surveyed by plaintiff's engineers; (2) that upon final hearing the injunction may be made perpetual; (3) for general relief.

On filing this bill, together with an injunction bond, a preliminary injunction was granted as prayed for, with the usual rule to show cause why the injunction should not be continued. On the return of the rule, plaintiff presented affidavits in support of the allegations of the bill, and defendant presented an answer and counter affidavits.

The defendant claimed that the plaintiff was not authorized under its charter to build the portion of road for which a crossing was required; and that another route was practicable which would give an overhead instead of a grade crossing.

The plaintiff rested its right to make a grade crossing upon the power conferred by § 10 of act of April 4, 1868 (under which it was organized), and its supplements (Purdon's Digest, 1416), and the 1st section of article 17 of the state Constitution; and upon the grounds: (1) That both roads were mere branches for the passage of a few coal trains; (2) the point of crossing was in a rough, uninhabited country; (3) it was impossible to make the crossing by plaintiff's route either above or below grade; (4) considering the amount of business to be done, the plaintiff has made the enormous investment of $250,000 in the railroad and mine; (5) the adoption of the defendant's alternative route would involve the abandonment of the completed work on the most expensive part of plaintiff's road and the outlay of $50,000 more, which would simply mean ruin to this infant enterprise; (6) though the plaintiff company and the coal company are fully prepared to go to work, the obstruction of this crossing absolutely blocks them until their rights can be adjudicated by the slow process of an equity suit; (7) the defendant would be in no way damaged by the grade crossing asked for.

After argument the preliminary injunction was dissolved by the court, KNAPP, A. L. J.

Thereupon plaintiff presented a petition for a rehearing and special injunction, which was denied, per HAND, P. J., and plaintiff appealed, assigning as error: (1) The dissolution of the preliminary injunction; (2) the refusal of rehearing and special injunction; and (3) the refusal to continue the preliminary injunction.

*S. P. Wolverton, W. W. Watson,* and *James H. Torrey,* for appellant.—The plaintiff, under its charter, had the right to select and adopt its line of railroad, and neither the defendant nor the court can revise it or suggest another. The only question for the court to determine is "the mode of such crossing," and whether it is "reasonably practicable" to avoid a grade crossing at the point of location.

The action of a railroad company in the location of its line is the exercise of a discretion vested in the company and cannot be reviewed. Cleveland & P. R. Co. v. Speer, 56 Pa. 325, 94 Am. Dec. 84; Parke's Appeal, 64 Pa. 137; New York & E. R. Co. v. Young, 33 Pa. 175; Struthers v. Dunkirk, W. & P. R. Co. 87 Pa. 286; Fall River Iron Works Co. v. Old Colony & F. River R. Co. 5 Allen, 221.

Under a charter which fixes one terminus of a railroad at or near a certain point, a large discretion is conferred upon the railroad company, in locating their road, the exercise of which will not be revised by this court unless they have clearly exceeded its just limits or acted in bad faith. Wood, Railway Law, p. 743, § 237.

Under act of June 19, 1871, § 2, the manner of crossing, whether at grade or above grade, and the regulation of such crossing by proper rules to be observed by both companies, constitute the matter to be determined by this court. See Pittsburg & C. R. Co. v. South-west Pennsylvania R. Co. 77 Pa. 173; Baltimore & C. Valley R. Extension Co.'s Appeal, 10 W. N. C. 530.

*Willard & Warren* and *Henry W. Palmer,* for appellee.—Before assuming to build a railroad upon a certain location by virtue of sovereign power, the right to exercise that power in a given locality must be clearly established. Com. v. Erie & N. E. R. Co. 27 Pa. 339, 67 Am. Dec. 471.

No such rule as that the court cannot deflect the location of a railroad so as to avoid a grade crossing is sustained by the authorities cited by appellant.   See Pittsburg & C. R. Co. v. South-west Pennsylvania R. Co. 77 Pa. 187; Philadelphia, W. & B. R. Co. v. Williams, 54 Pa. 103.

PER CURIAM:

The decree of the court in this case, dissolving the preliminary injunction of the 21st of November, 1887, is now reversed and set aside at costs of appellee; and it is ordered that the said injunction be reinstated to remain in force until final hearing, with such modifications looking to the safety of the proposed crossing as the court below may see proper to direct.